E-FILED
Monday, 31 March, 2025  05:39:42 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| CATHERINE REED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:24-cv-01520-JEH |
| | ) | |
| v. | ) | |
| | ) | |
| AREA 52, d/b/a PUB 52, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

**INTRODUCTION**

On December 30, 2024, Plaintiff filed the instant action against Defendant seeking redress for Defendant's violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq*. [Dkt. 1] On January 6, 2025, Plaintiff filed her First Amended Complaint correcting Defendant's entity name. [Dkt. 3] On February 10, 2025, Defendant was served with Plaintiff's complaint. [Dkt. 5] Defendant's responsive pleading was due on or before February 20, 2025. [Dkt. 5] Despite being duly served with Plaintiff's complaint, Defendant failed to appear or otherwise respond to Plaintiff's complaint. On February 27, 2025, Plaintiff filed a Motion for Entry of Clerk's Default. [Dkt. 7] On March 17, 2025, the Court directed the Clerk to enter a default against Defendants. [Dkt. 8] In light of Defendant's failure to respond to Plaintiff's complaint and the clerk's entry of default against Defendant, Plaintiff now moves this Court for entry of a final default judgment against Defendants pursuant to Fed. R. Civ. P. 55(b)(2).

1

## **LEGAL STANDARD**

"Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment after default has been entered in accordance with Rule 55(a)." *Allied Van Lines v. iMove, Inc.*, 2018 U.S. Dist. LEXIS 12537, at *8 (N.D. Ill. 2018). "Upon the entry of default, the 'well-pled allegations of the complaint relating to liability are taken as true. . .'" *Chi. Premium Steaks, LLC v. Int'l Food Serv. Purchasing Grp. Inc.*, 2021 U.S. Dist. LEXIS 270626, at *3 (N.D. Ill. 2021). "Once the default is established, and thus liability, the plaintiff still must establish its entitlement to the relief it seeks." *Russell Dean, Inc. v. Maher*, 2018 U.S. Dist. LEXIS 167479, *8 (N.D. Ill. 2018) *citing VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016). "Although upon default the factual allegations of a complaint related to liability are taken as true, those allegations relating to damages suffered are ordinarily not." *Sullivan v. DSSA Mgmnt., Inc.*, 2004 U.S. Dist. LEXIS 11125, at *9 (N.D. Ill. 2004). "A default judgment establishes as a matter of law, that a Defendant is liable to a Plaintiff on each cause of action alleged in a complaint." *Allied Van Lines*, 2018 U.S. Dist. LEXIS 12537, at *8-9 *citing United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989).

## **ARGUMENT**

### I.     The Court Has Jurisdiction Over Plaintiff's Claims

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 as Title VII is a federal statute. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district. *See* Exhibit A, Declaration of Catherine Reed, ¶3.

### II.     Defendant Was Properly Served

2

Defendant was properly served as a summons and the Complaint were served by a process server. [Dkt. 5]. *See* Fed. R. Civ. P. 4(h).

**III**.    **Factual Allegations**

Plaintiff was employed by Defendant until September 2024. *See* Ex. A, ¶3. Plaintiff is a member of a protected class on the basis of sex (female) and sexual orientation (bisexual). *Id.* at ¶5. Since at least September 13, 2024 Defendant subjected Plaintiff to different terms and conditions of employment than others not within her protected class and she was subjected to a hostile work environment on the basis of sex in violation of Title VII *Id.* at ¶6. From the onset of her employment, Larry (LNU), Defendant's owner and Plaintiff's supervisor would make inappropriate and sexually suggestive remarks about her appearance. *Id.* at ¶7.

Larry would comment on Plaintiff's outfits, saying things like, "Oh, look at your outfit! I love this, this is why you were hired," suggesting Plaintiff only got the job due to sex appeal. *Id.* at ¶8. Larry would also make Plaintiff perform "360's" in front of him so he could assess her appearance. *Id.* at ¶9. On several occasions, Larry would call over customers and ask them to admire Plaintiff or her outfit, making Plaintiff feel extremely uncomfortable. *Id.* at ¶10. On one instance, Larry tugged on the loose part of Plaintiff's shorts with his finger, and other times, he physically grabbed Plaintiff's waist without permission. *Id.* at ¶11.

Larry would regularly move Plaintiff out of the way by grabbing Plaintiff by the waist with both hands instead of simply asking Plaintiff to move. *Id.* at ¶12. Larry even tickled Plaintiff, and when she expressed discomfort or disagreed with him, he would Plaintiff had a "bitchy attitude" and dismiss her feelings. *Id.* at ¶13. None of these acts of physical touch were consented to nor did they serve any legitimate business purpose. *Id.* at ¶14. Plaintiff's opposition to the nonconsensual sexual touch was protected activity. *Id.* at ¶15.

During a staff meeting, Larry publicly humiliated Plaintiff by telling her to "stop dressing like a slut" and "looking so slutty" because, in his words, Plaintiff would make tips regardless. *Id.* at ¶16. In addition to his treatment of Plaintiff, Larry also made inappropriate comments and engaged in inappropriate behavior toward other women in the workplace, which made Plaintiff highly uncomfortable. *Id.* at ¶17. Claire, another female bartender, has been subjected to Larry's crude and sexually explicit comments. *Id.* at ¶18. Plaintiff witnessed Larry putting his mouth on her nipple and calling her "nipples." *Id.* at ¶19. This provides evidence for a systemic and pervasive environment of discrimination and harassment of females. *Id.* at ¶20.

When Plaintiff started working for Defendant, Larry told her he was going to "break [Plaintiff] out of [her] shell" and take Plaintiff out to get her drunk to see her "wild side." *Id.* at ¶21. Plaintiff declined this as unwelcome advances and harassment. *Id.* at ¶22. Larry also made derogatory comments about another female bartender, Jordan (LNU), saying that he wished he had hired Plaintiff before her because he was "desperate" when Jordan applied for the position. *Id.* at ¶23. Larry said that if he had known that "[Plaintiff] was going to come in here looking like that," he would have never hired Jordan. *Id.* at ¶24.

Ultimately, he put Jordan back in the kitchen and said, "you're losing me business as a bartender, you look better as a cook." *Id.* at ¶25. On multiple occasions, Larry directed homophobic and sexist slurs in Plaintiff's presence on account of her sexual orientation, bisexual. *Id.* at ¶26. Furthermore, Larry regularly made offensive comments about the gender-neutral bathroom at work, calling it the "gay bathroom" or the "half and half bathroom," and would use homophobic slurs toward any employees that used it. *Id.* at ¶27. This environment created an unsafe and unprofessional atmosphere, where harassment and discrimination were tolerated, and any complaint or discomfort expressed was ignored or dismissed. *Id.* at ¶28.

Larry also regularly yelled at Plaintiff and disrespected her in front of customers. *Id.* at ¶29. In or around September 2024, Larry called Plaintiff yelling and cursing about a minor issue involving the cash drawer, which Plaintiff believed to be veiled frustration at Plaintiff refusing his sexual advances. *Id.* at ¶30. Plaintiff told Larry that there was a more respectful way to handle the situation, his behavior was affecting her mental health, and she was tired of the anger and disrespect he displayed toward her. *Id.* at ¶31. This opposition constituted protected activity. *Id.* at ¶32.

After this, Larry took Plaintiff off the schedule and revoked her access to the employee app. *Id.* at ¶33. Though Larry never formally communicated Plaintiff's termination, the loss of access to the app and being taken off the schedule has led Plaintiff to reasonably believe she was terminated as she can no longer conduct any business for Defendant. *Id.* at ¶34. In sum, Larry created a work environment where Plaintiff was constantly subjected to sexual harassment, discrimination based on her sex and sexual orientation, and offensive comments about gender, sexual orientation, and gender identity. *Id.* at ¶35. Plaintiff was unlawfully terminated because of her sex (female), and sexual orientation (bisexual) in late September 2024. *Id.* at ¶36. Plaintiff was retaliated against and her employment was ultimately terminated for opposing unlawful discrimination and for exercising her protected rights. *Id.* at ¶37. Plaintiff reported the sexual harassment and/or sexual assault to Defendant. *Id.* at ¶38. Plaintiff was targeted for termination because of her sex and sexual orientation and reporting of illegal activity. *Id.* at ¶39. Plaintiff suffered multiple adverse employment actions including, but not limited to, being terminated. *Id.* at ¶40. There is a basis for employer liability for the sexual harassment that Plaintiff was subjected to. *Id.* at ¶41. Plaintiff can show that she engaged in statutorily protected activity –a necessary

component of her retaliation claim- because Plaintiff lodged complaints directly to her manager about the harassment. *Id.* at ¶42.

### IV. Damages Available to Plaintiffs Who Suffer Discrimination or Harassment under Title VII

#### A. Back Pay

Title VII's remedial scheme is designed to make an aggrieved party whole. *See Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982). Generally, a court will look to provide "[c]omplete relief for a victim of discrimination." *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569 (1997). Accordingly, under section 42 U.S.C §2000e-5 of the Act, a successful plaintiff may recover equitable relief in the form of back pay and reinstatement (or front pay in lieu of reinstatement). See 42 U.S.C §2000e-5.

Once the discrimination is shown, entitlement to back pay is presumed. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405 (1975). Back pay accrues from the date the discrimination occurred until the time of trial or entry of judgment. It consists of **all** monetary benefits that would have been earned by the employee had there been no discrimination. The amount generally includes wages, raises the employee would have received, fringe benefits, vacation pay, pensions, health insurance benefits, wage increase, and bonuses. *See Marcing v. Fluor Daniel, Inc.,* 826 F.Supp. 1128, 1142 (N.D.Ill. 1993), rev'd on other grounds.

In the present case, Plaintiff is entitled to **$15,000.00** in back pay.

#### B. Compensatory Damages/Emotional Distress

With the passage of the Civil Rights Act of 1991, victims of intentional discrimination may recover compensatory damages.  See 42 U.S.C.  §1981(a-b)(2).  Compensatory damages are damages awarded to compensate the plaintiff for non-pecuniary losses for emotional distress, psychological harm, or physical harm. In *Lampley v. Onyx Acceptance Corp.*, 340 F.3d

478, 483-84 (7th Cir.2003), the Seventh Circuit established that district courts should examine the following factors when analyzing compensatory damages awards: whether the damages awarded (1) were monstrously excessive; (2) had no rational connection between the award and the evidence, and (3) were roughly comparable to awards made in similar cases." *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 483–84 (7th Cir.2003); *Equal Emp't Opportunity Comm'n v. Autozone, Inc.*, 707 F.3d 824, 833 (7th Cir. 2013).

In the present case, Plaintiff suffered severe discrimination, harassment, and retaliation on the basis of sex. The discrimination Plaintiff experienced was perpetrated by Defendant's owner and her supervisor. Further, Plaintiff consistently opposed the unlawful treatment she was experiencing, only to be left without recourse as a result of the discrimination and harassment being perpetrated by Defendant's owner. As a result, she was forced to endure continued disparate treatment on the basis of sex. After several months of continued opposition, Defendant terminated Plaintiff's employment. This left Plaintiff feeling humiliated and unheard, as if her concerns or the discrimination and harassment she endured was an acceptable practice in Defendant's workplace.

Courts in the Seventh Circuit regularly award compensatory damages of $50,000.00 in default judgment for Title VII cases. *See Clark v. Custom RV Repair LLC*, 2024 U.S. Dist. LEXIS 167771, at *4 (N.D. Ind. July 29, 2024) (awarding $50,000 in compensatory damages for emotional distress in a Title VII sexual harassment and retaliation case); *Webb v. Playmonster LLC*, 2024 U.S. Dist. LEXIS 71884, at *3 (W.D. Wis. Apr. 18, 2024) (awarding $50,000 in compensatory damages for emotional distress caused by pregnancy discrimination and wrongful termination); *Fountain v. Chime Sols., Inc.*, No. 1:22-CV-3762-MHC-JSA, 2023 U.S. Dist. LEXIS 190895, at *28-29 (N.D. Ga. Oct. 24, 2023) (awarding the plaintiff $50,000 in compensatory

damages in an ADA case in default judgment); *Hines v. JBR Trucking LLC*, No. 2:18-CV-2159, 2020 U.S. Dist. LEXIS 50462, at *13 (C.D. Ill. Mar. 24, 2020) (awarding $50,000 in compensatory damages in a Title VII race-based discrimination case); *EEOC v. HCS Med. Staffing, Inc.*, 2012 U.S. Dist. LEXIS 19996, at *12-13 (E.D. Wis. Feb. 17, 2012) (awarding $50,000 in compensatory damages after finding the employer's discriminatory termination of a pregnant employee was humiliating and degrading to the plaintiff).

Plaintiff has suffered from traumatic harassment that resulted in severe emotional damages. Plaintiff requests a compensatory damage award of **$50,000.00**.

### C.  Front Pay

Under Section 2000e-5(g)(1) of Title VII, courts are authorized to "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . ., or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). In interpreting this provision, courts have approved front pay as the functional equivalent of reinstatement under Title VII. *See Williams v. Pharmacia*, 137 F.3d 944, 951-52 (7th Cir. 1998) (stating that front pay "fall[s] squarely within the statutory language authorizing 'any other equitable relief'").

Generally, front pay is awarded where reinstatement is not an option, either because a plaintiff is unable to procure her position because it is unavailable, or because an acrimonious relationship between the plaintiff and her employer renders reinstatement inappropriate. *See id.* at 951 (noting that trial court awarded front pay instead of reinstatement because merger eliminated plaintiff's position). An employee may receive front pay until she can reasonably be expected to have moved to a similar position. *See id.* at 954 ("Front pay is awarded for a reasonable period of time until a date by which the plaintiff, using reasonable diligence, should

have found comparable employment.") (*citing Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1045 (7th Cir.1994).

In the present case, Plaintiff suffered severe sex-based discrimination, sexual harassment, and retaliation. Plaintiff continuously opposed discrimination and harassment perpetrated by Defendant's owner, Larry. When Plaintiff continuously standing up for her protected rights began to frustrate Defendant, she was terminated. By terminating Plaintiff following her continued opposition to discrimination and harassment, Defendant has shown a clear endorsement of sex-based conduct that ultimately resulted in a loss of Plaintiff's employment and financial security. As a result of the above, the employment relationship between Plaintiff and Defendant is broken and irreparable.

Hence, Plaintiff respectfully requests that the Court award her six months of front pay: $15,000.00.

### D. Pre-Judgment Interest

Courts award interest because "compensation deferred is compensation reduced by the time value of money." *In re Milwaukee Cheese Wisconsin, Inc.*, 112 F.3d 845, 849 (7th Cir. 1997). Under Title VII, a Court may allow two types of interests: prejudgment interest and post-judgment interest. Prejudgment interest restores a plaintiff to the position he would have been in but for the violation. *See Frey v. Hotel Coleman*, 903 F.3d 671, 682 (7th Cir. 2018).

In general, whether and how to award prejudgment interest lies in the discretion of the district court. There is – however – a presumption in favor of granting prejudgment interest. *See Hotel Coleman*, 903 F.3d at 672; *Ernst v. City of Chi.*, No. 08 C 4370, at *50 (N.D. Ill. Dec. 21, 2018). Without an award of interest, compensation of the plaintiff is incomplete, and the defendant has an incentive to delay. In terms of the rate to be used, the Seventh Circuit has instructed district

courts to "use the prime rate as the benchmark for prejudgment interest". *Hotel Coleman*, 903 F.3d at 682.

As of the date of this filing, the prime federal interest rate is 8.5%. Accordingly, Plaintiff has calculated the pre-judgment interest award to be **$7,609.20.**

### E. Post-Judgment Interest

A prevailing plaintiff in federal court is entitled to post-judgment interest at a rate prescribed by statute. See 28 U.S.C.§1961(a); *Miller v. Artistic Cleaners*,153 F.3d 781, 785 (7th Cir. 1998). Post-judgment interest compensates the aggrieved party for the loss of money during the period proceeding to final judgment. Interest pursuant to 28 U.S.C. §1961(a) is calculated "at a rate equal to the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of the judgment, as published by the Board of Governors of the Federal Reserve System." *Flowers v. SteerPoint Mktg., LLC*, No. 1:18-cv-01618-DLP-SEB, at *4 (S.D. Ind. Apr. 8, 2020). Generally, a Plaintiff may collect interest on the judgment amount and on the attorney's fees and the costs associated with the litigation from the date the award was entered to the date the award was paid. See *Fleming v. County of Kane, State of Ill.*, 898 F.2d 553, 565 (7th Cir. 1990).

Accordingly, Plaintiff requests that the Court award her post-judgment interest from the date the award was entered to the date the award is paid.

### F. Costs and Attorney's Fees

In Title VII actions, the prevailing party may recover reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k). Accordingly, upon the finding of a civil rights violation, a Court should order Defendant to pay Plaintiff the costs of maintaining the suit, including fees. A petition that presents competent evidence of an attorney's actual hours and standard fee provides a reasonable basis for the award of attorney fees by the trier of fact.

To determine a reasonable fee, the district court uses the lodestar method, multiplying the "number of hours reasonably expended on the litigation ... by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar approach forms the "centerpiece" of attorneys' fee determinations, and it applies even in cases where the attorney represents the prevailing party pursuant to a contingent fee agreement. *See Blanchard v. Bergeron*, 489 U.S. 87 (1989). There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award. See *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011).

Reasonable hourly rate has been defined as one that is "derived from the market rate for the services rendered." *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir.2003). An attorney's actual billing rate for similar litigation is presumed to be appropriate to use as the market rate. *See id*. The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). If a fee applicant does not satisfy its burden, the district court has the authority to make its own determination of a reasonable rate. See *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir.1999).

For the Court's consideration and convenience, Plaintiff states that her costs and reasonable attorney's fees at this point are **$9,520.00**.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter a default judgment against Defendant in the amount of **$84,668.20**, which can be itemized as follows:

| Claim | Statutory Damages |
| --- | --- |
| Title VII Backpay | **$15,000.00** |
| Title VII Emotional Distress | **$50,000.00** |

| Title VII Front Pay | **$15,000.00** |
|---|---|
| Pre-judgment Interest | **$5,875.20** |
| Attorney Fees & Costs | **$9,000.00 + $520.00** |
| | **Total:**<br>**$89,520.00** |

### IV. Federal Rule 69(A) Authorizes Plaintiffs to Conduct Discovery in Order to Aid Their Collection and Enforcement of the Default Judgment.

There is a likelihood that Defendant will not satisfy the Default Judgment once entered. Accordingly, in order to aid its execution and collection of the judgment, Plaintiff is requesting leave of court to conduct discovery into this narrow issue.

The Federal Rules of Civil Procedure provide as follows:

**(2)** *Obtaining Discovery.* In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a)(2). Federal law authorizes a judgment creditor, such as Plaintiff here, to pursue discovery in order to aid its ability to enforce and collect on a judgment. In *Evans v. Chicago Football Franchise Limited Partnership*, 127 F.R.D. 492, 493 (N.D. Ill. 1989), the court confirmed that the federal rules allow for a party to conduct discovery in aid of its efforts to enforce or collect a judgment, and that such discovery can be conducted following the entry of the judgment. The court relied on Rule 69(a) to support its findings that '[i]t is clear from the plain language of the rule that plaintiff may need use the federal discovery rules" in order to discover, post-judgment, information concerning defendant's assets, or to otherwise enforce or collect on that judgment. *Id.* The court highlighted the fact that the federal rules authorize a judgment creditor to use the federal discovery rules, or to proceed in a manner that is authorized by state law and practice. *Id.* Finally,

the court noted that a judgment creditor can obtain discovery from a judgment debtor or even third

parties without the need to file a separate lawsuit or proceeding. *Id*.

      **WHEREFORE**, Plaintiff respectfully requests that this Honorable Court grant this Motion

and enter a Default Final Judgment against Defendant.


Dated: March 31, 2025                  Respectfully Submitted,

                                        /s/ *Peyton M. Paschke*
                                        Peyton M. Paschke, Esq.
                                        Sulaiman Law Group, Ltd.
                                        2500 S. Highland Ave.
                                          Suite 2500
                                          (630) 581-5450
                                          ppaschke@sulaimanlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2025, I electronically filed the foregoing with the Clerk of the Court for the Northern District of Illinois by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the parties in the case are not CM/ECF users.  I have mailed the foregoing motion by USPS Priority Mail, postage prepaid, to the following parties:

Area 52, Inc d/b/a Pub 52
32371 Morgan Road
Mackinaw, IL 61755

Melanie Kennedy
702 Smith Street
Mackinaw, IL 61755-7642

/s/ *Peyton M. Paschke*

14